22 Cal.App.4th 265 (1994)
27 Cal. Rptr.2d 298
In re the Marriage of JACK and DOROTHY GOLDBERG.
SCOTTY D. HILL, as Special Administrator, etc., Appellant,
v.
DOROTHY GOLDBERG, Respondent.
Docket No. E011377.
Court of Appeals of California, Fourth District, Division Two.
February 7, 1994.
*266 COUNSEL
Butterwick, Bright & O'Laughlin and Michael Train Bright for Appellant.
James O. Cripps, William E. Windham and Gilbert Y. Nishino for Respondent.
OPINION
McDANIEL, J.[*]
(1) This appeal presents, on undisputed facts, an issue of first impression, namely whether, under section 573, subdivision (a) of the Probate Code,[1] decedent's cause of action for nullity of marriage survived his death. The issue was joined when the special administrator of decedent's estate moved for an order substituting himself in as petitioner in decedent's action insofar as it sought to nullify the marriage, an action filed by decedent before his death. The trial court denied the motion. In its extensive minute order, the trial court stated, "[t]he issue framed by the *267 motion is whether a nullity action prosecuted by a party survives his death. [¶] The answer to this question is in the negative." The court then cited, as controlling, Greene v. Williams (1970) 9 Cal. App.3d 559 [88 Cal. Rptr. 261] (Greene).
In Greene, the issue presented was "[c]an a parent annul a minor child's marriage after the child's death because the child married without parental consent?" (Greene, supra, 9 Cal. App.3d 559, 561.) In our view, the issue there presented is not the same as the one here. In Greene, the action was initiated by the decedent's mother after her son's death and involved no identified property issues; here, the action was initiated by decedent himself before he died and does involve identified property issues. In Greene, the trial court sustained the widow's demurrer interposed on the ground that the court had no power to alter the marriage status after it had been dissolved by the boy's death. The judgment of dismissal was affirmed on appeal. For reasons which we shall explain, Greene is inapposite to the issue here under review. Otherwise, it is our further view that Probate Code section 573, subdivision (a), is controlling, and so we shall reverse with directions the order appealed from.

FACTUAL AND PROCEDURAL BACKGROUND
At age 90, Jack Goldberg (decedent) married Dorothy Guffey Goldberg (respondent). After only four months of marriage, decedent moved to the Hemet Retirement Center (Center) and there established a separate residence. We note in passing that respondent accompanied decedent to the Center. At the time of decedent's admission to the Center, respondent concealed from the administrator of the Center the marital status of the parties, stating that she was not married to decedent but was only a friend trying to help him and that she no longer wished to have anything to do with him. Respondent further stated to Konnie Adams, a member of the Center's admitting staff, that decedent would be solely responsible for any obligations to the Center arising by reason of his admission.
About two months later, decedent filed a petition for dissolution and, in the alternative, for nullity of the marriage. The count for nullity cited fraud per former section 4425, subdivision (d) of the Civil Code as the basis for the relief sought. In her response, respondent concurred in the request for dissolution of the marriage but opposed the request for nullity of the marriage. Both parties, in their pleadings, alleged that there were no community assets to be distributed.
By April of 1990, about five months after the nullity action was filed, because of a fall resulting in a fractured hip, decedent was no longer able to *268 care for himself. As a consequence, he was moved to Colonial Convalescent Center. As a further result of his physical disability, decedent was unable to attend a mandatory settlement conference in the case he had initiated; the case was eventually removed from the trial setting calendar.
On May 3, 1990, respondent filed a petition seeking appointment as conservator of the person and estate of decedent, alleging therein that the estate had a value of $320,000 and that decedent was a full-time resident of a total care convalescent hospital. Several months later, the court found respondent disqualified to act as conservator of decedent's person and estate by reason of the content of the verified pleadings in the nullity action. Instead, the court appointed the public guardian as conservator of decedent's person and estate.
About three weeks later, decedent died. Within nine days, respondent had petitioned for letters of administration of decedent's estate. In the probate proceedings, decedent's four nieces and nephews all filed nominations of the public administrator as the person to receive letters of administration of decedent's $320,000 estate. Eventually, letters of special administration with special powers were issued to Scotty D. Hill (appellant), Riverside County's public administrator. Thereafter, appellant moved for an order substituting himself into decedent's nullity action as petitioner. After extensive written filings both in support of and in opposition to the motion, it was orally argued and then submitted for decision. Thereafter, the court issued its minute order indicating its decision to deny the motion. About two weeks later, a written order reflecting such decision was signed and filed. This appeal followed.

DISCUSSION
In pursuing this appeal, appellant has narrowed consideration of the issue we announced at the outset by focusing on the fundamental difference between the objective of an action to dissolve a marriage and one to annul it. The former is concerned with marital status as such; the latter is concerned with whether a contract was validly entered into at all. While it is true that a decree of nullity may, in the popular sense, affect the marital status, the legal reality is that a successful action for nullity of marriage results in a judicial determination that there never was a contract and hence there never was a marriage.
At this point, we must observe that respondent's position on appeal is at best misguided, at worst disingenuous. In her brief, she states, "... appellant's opening brief is fatally flawed because it does not attempt to brief or *269 explain why a marriage is not terminated by death especially in light of Cal. Civil Code section 4350 which states there are only three ways in California of terminating marriage and the first way is by the death of one of the parties. Appellant does not explain or confront the issue once a marriage is terminated how it can be created and reterminated a second time. This is an absurdity on the face of it."
It is the foregoing characterization of appellant's position which is an absurdity. What respondent herself has failed to confront and to deal with is that decedent's action is not about termination of marriage; it is about whether a marriage ever existed in the first place.
In the circumstances surrounding this case, the distinction which appellant has drawn between an action for dissolution of marriage and one for nullity of marriage is not just a theoretical legal quibble. Significant financial consequences attend the resolution of the dispositive issue. Decedent has four nieces and nephews who, under California's law of intestate succession, stand to inherit decedent's estate in its entirety. However, if it turns out that respondent was validly married to decedent and is therefore a surviving spouse, she stands to inherit one-half of decedent's estate.
It is also significant to us that, for reasons sufficient to decedent, he chose to file an action seeking nullity of his marriage to respondent, and to do so based on fraud. Respondent has chided appellant for including in his recitation of facts references to the conservatorship and other matters outside the precise framework of the nullity action. In our view, those events, as we have recounted them above, are useful indeed in providing a compelling inference of what was really going on and hence a relevant background for the technical legal dispute here presented. Such events are useful because they validate the decedent's motives for initiating the nullity portion of the litigation and in turn justify our seeking a sound rationalization of this case under section 573 of the Probate Code, thus assuring that decedent's nullity case is not denied the chance to play out to its fully adjudicated conclusion, whatever that may be.
Turning then to such rationalization, the starting point of course is section 573 of the Probate Code, the text of which has been earlier quoted in the margin. Its language is categorical; an action "may be maintained by ... the [decedent's] personal representative." The enactment of this statute in 1961 was intended to supplant a hodgepodge of random provisions dealing with the survivorship of actions for or against a person after his/her death. The initial thrust of the Law Revision Commission's effort to evolve comprehensive survival legislation was directed initially at tort actions. To limit *270 the effect of the proposed legislation to tort actions proved to be difficult indeed. The commission's comment preceding its proposals (which were later enacted) explained that "1. The proposed legislation provides for survival of all causes of action. The Commission attempted originally to draft a statute limited to effectuating its view that all tort causes of action should survive, but encountered great difficulty in attempting to draft technically accurate and satisfactory language to accomplish this more limited objective. Legislation limited to `causes of action in tort,' would create problems because there simply is not a satisfactory definition of the meaning and scope of the term `tort.' Moreover, such language would raise questions as to whether actions arising from breaches of trust and purely statutory actions, whether or not `sounding in tort,' were included. Similar questions would arise if a statute of limited scope were written in other terms. The Commission therefore recommends the enactment of a broad and inclusive provision for the following reasons: [¶] (a) A comprehensive survival statute would have the advantage of simplicity and clarity by eliminating difficult questions of construction which would result from the use of more restrictive language. [¶] (b) Such a statute is sound in theory since there does not appear to be any rational basis upon which to determine that some actions should survive while others do not. [¶] (c) A comprehensive survival statute would make little or no substantive change in the present law with respect to survival of non-tort causes of action. The Commission's study of the present law has shown that actions based on contract, quasi-contract, trusts, actions to recover possession of property or to establish an interest therein, and most statutory actions already survive." (3 Cal.Law Revision Com. Rep. (Sept. 1961) pp. F8-F9, fn. omitted.)
Otherwise, it should be observed that the substance of section 573 of the Probate Code was reenacted variously in 1987 and 1990 and yet again in 1992 (see fn. 1, ante); whereas, Greene, supra, 9 Cal. App.3d 559, and In re Marriage of Williams (1980) 101 Cal. App.3d 507 [161 Cal. Rptr. 808], which purports to rely on Greene, were both decided well before the reenactments noted. Thus, under orthodox canons of statutory construction, assuming that the two cited cases actually militate in favor of the trial court's ruling (which we do not concede), it must be accepted that the Legislature was reaffirming its intention that section 573 be all inclusive. In this connection, if it be determined that Greene is apposite to the facts here, we decline to follow it.
However, in our view there is no precedential tension here. This is so because of the fundamental difference, earlier noted, between an action for dissolution of marriage and one for nullity. One seeks to terminate the marital status; the other seeks to inquire whether any such status ever existed. Thus, an action to dissolve a marriage does not "survive," because its purpose has been abruptly accomplished by the death of one of the *271 spouses. In other words, the issue of survival of a cause of action for dissolution of marriage is subsumed by the fulfillment of the purpose of such action by reason of a more precipitous event. In short, the dissolution action has been made moot by the death of one of the spouses. The same cannot be said with regard to an action for nullity. Whether one of the putative spouses dies after the action was commenced is wholly irrelevant to a judicial inquiry into whether the marital contract had been induced by fraud.
Looking at the end results of the two actions, a decree of dissolution results in a determination that, although the parties at one time were legally married, irreconcilable differences between them were such as to lead to a termination of the marriage. Such decree recognizes the validity of the marriage contract in the first instance and then declares under an applicable statute that grounds exist to terminate the contract and dissolve the marital status. On the other hand, a decree of nullity results in a determination that no legal contract of marriage ever came into being because the consent of one party was obtained by fraud. Hence, the marital status never legally existed between the parties and the decree relates back to the date of the purported marriage and erases all of the consequences of any mistaken reliance on there being such a relationship. (Sefton v. Sefton (1955) 45 Cal.2d 872, 874 [291 P.2d 439].)
In view of the foregoing and especially the categorical nature of the Probate Code section 573 language itself, the burden is on the respondent to demonstrate why there should be an exception carved out from the clear import of the statute for an action for nullity of marriage. This she has failed to do. It is no refutation of the statute's application to an action for nullity of marriage to argue that death "terminated" the marriage, with the result that there is nothing to adjudicate in an action for nullity, the marriage already having been terminated. To reiterate, an action for nullity of marriage has as its objective a judicial determination that there never was a marriage at all.
At oral argument, counsel for respondent urged that former section 4350 of the Civil Code rendered the result we have reached logically impossible to reach. Section 4350 provided "Marriage is dissolved only by (1) the death of one of the parties, (2) the judgment of a court of competent jurisdiction decreeing a dissolution of the marriage, or (3) a judgment of nullity." Although we had difficulty following counsel's argument, it seemed to amount to this: because (1) renders pursuit of (2) moot, it necessarily follows that (1) also renders pursuit of (3) moot. This amounts to arguing that "it is so because I say it is so." What counsel neglected to consider in making his argument is, because of the inherent differences in the objectives of an action for dissolution and one for nullity, that the death of one of the parties *272 likewise has a different impact in terms of the prospective outcome of the respective actions. Thus, while a judgment of nullity may terminate a putative marriage, it also, unlike a judgment of dissolution, makes an adjudication that there never was a marriage. In short, it does not immutably follow that the death of a spouse before a judgment of nullity preempts the application of section 573 of the Probate Code by precluding a judicial inquiry into whether a marriage ever existed at all.
Turning to more technical aspects of the main issue, the applicable statute requires that an action for nullity of marriage, based on fraud, must be initiated by the party alleged to be the victim of the fraud and that such action must be commenced within four years of discovery of the fraud. (Civ. Code, former § 4426, subd. (d).) Here the action for nullity of marriage, in which appellant sought to intervene, was initiated by the decedent and well within the period of limitation. That brings us back to the application of section 573 of the Probate Code. None of the authorities cited and relied upon by respondent involve an action for nullity of marriage, based on fraud, brought by a decedent in his or her lifetime.
We agree with appellant that his endeavor here is in substance substantially analogous to what occurred in Estate of Denton (1971) 17 Cal. App.3d 1070 [95 Cal. Rptr. 347] (Denton). In that case, the executor sought instructions under section 588[2] of the Probate Code under which it (the corporate executor) would initiate a lawsuit to recover estate assets, the divesture of which was allegedly procured by fraud. (17 Cal. App.3d at p. 1073.) The trial court denied the petition and, on appeal, the reviewing court affirmed the order of denial.
In the course of rationalizing its decision, the reviewing court stated, "[t]he personal representative has not only the power but the duty to sue to set aside a conveyance or transfer of property obtained from a decedent by fraud or undue influence. [Citations.] Previously such actions were specifically authorized by and against executors by Probate Code section 573. In 1961, that section was completely rewritten and is now a general survival statute. The effect of the 1961 amendment was to broaden rather than restrict the right to sue for violation of a decedent's property rights." (Denton, supra, 17 Cal. App.3d 1070, 1075.) Otherwise, the court explained that it interpreted the trial court's denial of the petition for instructions as "neither approving or disapproving the proposed lawsuit. It was exercising its discretion to reserve judgment until a later time." (Id. at p. 1076.)
*273 The significance here of Denton is compelling. We see little difference, on the one hand, in an administrator's instituting a lawsuit to recover, for the benefit of the estate, property of which the decedent was divested in his lifetime by reason of another's fraud (as in Denton) and, on the other hand, in an administrator's substituting in as petitioner in an action for nullity of marriage based on fraud (as here) where the net result of success in each instance is financially the same. In Denton a successful action would restore assets to the estate divested by fraud; here, a successful action of nullity would preclude respondent's succeeding to one-half of decedent's estate by exposing her fraud in inducing the marriage. In this connection, the evidence may well show respondent to be wholly blameless. However, justice compels and the plain language of section 573 of the Probate Code permits the cause against her to be tried.
Although the language of section 573 of the Probate Code is unequivocal, discussion of three additional cases will illustrate that the importance of property rights between spouses and the jurisdiction of California courts to litigate such rights despite the death of one of the spouses is fundamental under our jurisprudence. In other words, where more than marital status is involved, actions to resolve property rights among spouses survive the death of one of them.
The first such case is McClenny v. Superior Court (1964) 62 Cal.2d 140 [41 Cal. Rptr. 460, 396 P.2d 916] (McClenny). In McClenny, the wife initiated a divorce action against the husband. During the course of certain pretrial proceedings, the husband was ordered to pay child support to the wife, as well as to discharge the wife's medical, hospital, and other expenses. The husband failed to do so, and the court appointed a receiver to take possession and control of all the community assets to assure payment of the amounts ordered by the court. Later, the court expanded that order by directing that actual title to the community assets be vested in the receiver. Thereafter, the court granted the wife an interlocutory judgment of divorce on the ground of extreme cruelty, bifurcating the proceedings and reserving the issue of division of community property. At the time of the decision in McClenny, divorce proceedings in California involved the issuance of interlocutory judgments declaring that the innocent spouse was entitled to have the marriage dissolved, with the result that the marriage was not dissolved until the entry of a final judgment. In McClenny, before a final judgment had been entered, and before any adjudication on the reserved issue of property rights of the parties had occurred, the wife died. The special administrator of the wife's estate then sought to intervene in the divorce action, asserting that the wife had willed her property in trust for the benefit of her three minor children and requesting that the court render a decision dividing the *274 property, title to which had been then vested in a receiver. The husband urged the court to strike the special administrator's complaint in intervention, dismiss the action and wind up the receivership on the ground that the death of the wife had abated the divorce action and deprived the superior court of jurisdiction to adjudicate the rights of the parties in the community property. The court denied the husband's motion to strike the complaint in intervention; however, it also granted the special administrator's motion to be substituted as plaintiff in the place and stead of the deceased wife, thus rendering the complaint in intervention moot. The husband thereafter filed a petition for writ of mandate to compel termination of the receivership and for a writ of prohibition to prevent the trial court from proceeding to divide the property.
The Supreme Court denied the husband's petition and, in so doing, held that the death of the wife did not deprive the trial court of jurisdiction to divide the community property. The court stated, "Although the death of one of the spouses in such a case abates the divorce action, the abatement relates to the status of the parties and not to the property rights theretofore adjudicated. The death destroys the cause of action for the dissolution of the marriage; it does not liquidate the property rights which crystallized in the interlocutory decree." (McClenny, supra, 62 Cal.2d 140, 144.)
Continuing, the court further stated, "In the instant case the interlocutory decree created in Mrs. McClenny a valuable property right which her death cannot destroy. The court granted Mrs. McClenny an interlocutory decree of divorce on the ground of extreme cruelty; such a decree necessarily constitutes an adjudication that in the absence of unusual circumstances, Mrs. McClenny is entitled to more than one-half of the community property. [Citations.] The decree thus created in Mrs. McClenny, and ultimately in her estate, a property right to a share of the community property in excess of the one-half portion to which the estate would have been entitled if the court had failed to grant Mrs. McClenny a divorce upon the ground of extreme cruelty." (McClenny, supra, 62 Cal.2d 140, 145-146.)
As above noted, McClenny dealt with a divorce and not a nullity action. Even so, the court, recognizing that the wife was potentially entitled to receive more than one-half of the estate, held, despite her death, that those property issues remained subject to litigation and permitted the special administrator to be substituted in the place of the deceased wife. Because the issue in the case before us here is whether a marriage actually came into being, and, because that determination will dictate whether respondent is to receive one-half of the estate or nothing, it is clear that a property-right issue is the purpose of judicial inquiry here, just as it was in McClenny.
*275 In its recent unanimous opinion dealing with In re Marriage of Hilke (1992) 4 Cal.4th 215 [14 Cal. Rptr.2d 371, 841 P.2d 891], the Supreme Court cited McClenny with approval in stating that "[t]he death of one of the spouses abates a cause of action for dissolution, but does not deprive the court of its retained jurisdiction to determine collateral property rights [even] if the court has previously rendered judgment dissolving the marriage." (Id. at p. 220.)
The other of the three cases above referred to is Poon v. Poon (1966) 244 Cal. App.2d 746 [53 Cal. Rptr. 365] (Poon). Poon was also an action for divorce in which the wife's complaint contained three counts. The first sought a divorce and requested division of the community property. The second was one sounding in fraud in which the wife sought to set aside a written agreement pursuant to which she had conveyed to the husband certain properties for a consideration which later turned out not to be fair or reasonable. The third sought to establish a trust and to quiet title to property on the ground of a breach of the confidential relationship owed the wife by the husband. The husband's answer to the wife's complaint denied all of its allegations; he also cross-complained for divorce, specifying that the parties had executed a property settlement agreement, settling all their property rights. The case proceeded to trial. During the trial, the court recited that the wife had established a prima facie case entitling her to a divorce and that otherwise a trial was thereupon required to determine the validity of the property settlement agreement. The attorney for the wife acquiesced in the trial court's ruling; no objection was made thereto by the attorney for the husband. The wife and her corroborating witness then testified on the issue of extreme cruelty and the cause proceeded to trial on the validity of the property settlement agreement. Before the trial was concluded, the husband killed the wife. The administrator of the wife's estate then moved for an order substituting himself as plaintiff in the action. The trial court denied such motion on the ground that the court lacked jurisdiction to order the requested substitution; the administrator appealed. On appeal, the husband argued that the action for divorce abated upon the wife's death and that the trial court therefore lost jurisdiction to determine the validity of the property settlement agreement. The wife's special administrator argued that the second and third counts of wife's complaint, as above described, survived her death.
The reviewing court reversed the trial court, holding that the wife's second and third counts did survive her death and that the special administrator of the wife's estate was entitled to be substituted for the wife to pursue those two counts. In so holding, the Poon court stated, "Prior to 1961 and the amendment to Probate Code section 573 it was recognized by virtue of Civil *276 Code section 954 and Probate Code section 574 that all causes of action relating to the recovery of property and to the setting aside of a fraudulent conveyance survived. (1 Witkin, Cal. Procedure (1954) Actions, § 179, page 693; see Hardy v. Marcus, 15 Cal. App.2d 244, 244-245; Harris v. Harris, 57 Cal.2d 367, 370; Vragnizan v. Savings Union etc. Co., 31 Cal. App. 709, 712-714; see also, with respect to the assignability of a cause of action to recover property obtained by fraud or to set aside a fraudulent conveyance: Michal v. Adair, 66 Cal. App.2d 382, 388-389; American Trust Company v. California etc. Ins. Co., 15 Cal.2d 42, 67; Jackson v. Deauville Holding Co., 219 Cal. 498, 502.) In Harris it was held that the right to set aside a gift of community property made by a husband without the wife's consent survived the wife's death and could be exercised by her personal representative. Likewise in Vragnizan where the contentions were quite similar to those made in the present case, it was held that an action to recover one-half of the value of certain property allegedly concealed by a husband from his wife upon the settlement of their property rights during the pendency of an action for divorce did not abate with the death of the husband because the nature of the action was one for the recovery of an interest in property founded upon contract and not purely a personal action for tort. [¶] We perceive nothing in the enactment of the 1961 amendment to Probate Code section 573 which would change the long-established rule that a cause of action for the violation of a property right survives the death of the owner of the right. (Harris v. Harris, supra, p. 370.)" (Poon, supra, 244 Cal. App.2d 746, 752-753.)
Continuing, the court stated, "As to respondents' contention that the issues raised by the second and third causes of action in Rose's complaint were merely incidental to the divorce action and arose out of the marital relation, we point out initially that the fact that a cause of action arises out of a marital relationship does not prevent survival of that cause of action upon the death of one of the spouses. [Citations.]" (Poon, supra, 244 Cal. App.2d 746, 754.)
These three cases clearly announce a policy of the law in this state that the death of one party to a marriage does not preclude the later resolution of property issues raised in litigation pending before the death. Here, we have an a fortiori case; the action which respondent argues did not survive was for nullity of marriage, not dissolution. Because the determination of whether a marriage ever existed between decedent and respondent will determine whether she is or is not entitled to inherit one-half of decedent's estate, the policy above announced and applied in McClenny, Hilke and Poon requires that appellant be allowed to carry on decedent's action for nullity of marriage to its rightful conclusion.
*277 Based upon the foregoing analysis, we hold that decedent's action for nullity of marriage, which he initiated against respondent, survived his death and that the trial court erred in not granting appellant's motion to be substituted into such action as petitioner.

DISPOSITION
The order of June 10, 1992, which denied the motion of Scotty D. Hill, as Special Administrator of the Estate of Jack Goldberg, Deceased, for an order granting him leave to substitute himself as petitioner in the nullity portion of case No. D-87772 is reversed with directions to the trial court to enter a new and different order granting such motion.
Ramirez, P.J., and McKinster, J., concurred.
Respondent's petition for review by the Supreme Court was denied May 19, 1994.
NOTES
[*] Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.
[1] In force at the time of the operative facts of the case here under review, section 573, subdivision (a) of the Probate Code read: "Except as provided in this section, no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's personal representative." This provision was repealed by Statutes 1992, chapter 178 (Sen. Bill No. 1496), section 31 and reenacted among sections 377.20, subdivision (a), 377.30 and 377.40 of the Code of Civil Procedure.
[2] By Statutes 1987, chapter 923, section 35, operative July 1, 1988, sections 575 to 591.9 of the Probate Code were repealed and reenacted under new designations. Section 588 became section 9611.