[No. B207398. Second Dist., Div. Four. Sept. 29, 2009.]

ELIZABETH PRYOR, Plaintiff and Appellant, v.
JENNIFER LEE PRYOR, Defendant and Respondent.

## COUNSEL

Holland & Knight, Bruce S. Ross, Linda Rottman and Vivian L. Thoreen for Plaintiff and Appellant.

Kibre & Horwitz, Howard L. Horwitz and Eric G. Stockel for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—Elizabeth Pryor appeals from an order dismissing her petition to annul the marriage of her late father, Richard Pryor, and respondent Jennifer Lee Pryor.[1] We conclude that Elizabeth lacks standing to petition to annul the marriage and affirm.

### FACTUAL AND PROCEDURAL SUMMARY

Richard was a well-known comedian and actor. He had six children, including Elizabeth. Richard was diagnosed with multiple sclerosis in the mid-1980's. He was married to Jennifer in 1981 and they divorced in 1982. On June 8, 2001, pursuant to a confidential marriage license, Richard and Jennifer remarried. Richard died on December 10, 2005. At some point after his death, Elizabeth discovered his 2001 remarriage to Jennifer.

On July 13, 2007, styling herself as successor in interest to Richard, Elizabeth petitioned to annul Richard's 2001 marriage to Jennifer on the ground of fraud.[2] Jennifer responded with a motion to quash the petition on the grounds that Elizabeth lacked standing and that the petition was time-barred under Family Code section 2211, subdivision (d).[3] Elizabeth then filed an amended petition for annulment pursuant to section 2210, subdivision (d) (fraud), adding the allegation that the confidential marriage license was void. Jennifer moved to strike the allegation that the marriage should be annulled because the confidential marriage license was void (§§ 300, 350). She also renewed her effort to quash the proceeding on the ground that Elizabeth lacked standing and that the petition was time-barred under section 2211, subdivision (d) and California Rules of Court, rule 5.121(a)(1), (4).

The trial court granted Jennifer's motion. The court considered *Greene v. Williams* (1970) 9 Cal.App.3d 559 [88 Cal.Rptr. 261] (*Greene*) and *In re Marriage of Goldberg* (1994) 22 Cal.App.4th 265 [27 Cal.Rptr.2d 298] (*Goldberg*) and harmonized their holdings. It concluded that *Greene* "stands for the proposition that a nullity action alleging a voidable marriage does not survive the death of a spouse. *Goldberg*, on the other hand, allows a nullity action alleging a voidable marriage to proceed where a spouse initiates the action and then dies prior to its conclusion." The court rejected Elizabeth's

---

[1] In order to avoid confusion, and with no disrespect, we refer to the parties by their first names.

[2] Elizabeth also filed a separate action in probate, alleging elder abuse and other causes of action. (*In re The Richard Pryor Trust* (Super. Ct. L.A. County, 2008, No. BP098205).) We affirm the judgment in the companion appeal. (*Estate of Pryor* (2009) 177 Cal.App.4th 1466 [99 Cal.Rptr.3d 895].)

[3] Statutory references are to the Family Code unless otherwise indicated.

argument that section 2211 "evidences a legislative intent that a nullity action based on fraud survives the death of the defrauded spouse."

The court entered an order of dismissal with prejudice and this timely appeal followed.

## DISCUSSION

Elizabeth contends de novo review is appropriate, arguing that a motion to quash in family law is analogous to a demurrer. The standard of review on a question of annulment is substantial evidence (*In re Marriage of Ramirez* (2008) 165 Cal.App.4th 751, 756 [81 Cal.Rptr.3d 180]), while questions of statutory interpretation are subject to de novo review. (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1536 [22 Cal.Rptr.3d 447].)

Reversal is compelled, Elizabeth argues, by section 2211, "interpretive case law," survivability of a cause of action for fraud, and Code of Civil Procedure section 338, the three-year statute of limitations for actions based on fraud. She also contends that public policy compels reversal, arguing that caregivers should not be able to exploit their wards' dependence for their own benefit. According to Elizabeth, the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act or Act)[4] is designed to prevent such exploitation, and an affirmance here would allow Jennifer to evade the policies underlying that Act by marrying Richard.

*A. Annulment Statutes*

█ We begin our analysis with the statutory framework. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] *If there is no ambiguity, then we presume the lawmakers meant what they said*, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*People v. Coronado* [(1995)] 12 Cal.4th [145,] 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' ([Citation]; see *Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223 [60 Cal.Rptr.2d 722, 930 P.2d 979].)" (*Day v. City of Fontana* (2001) 25 Cal.4th

---

[4] Welfare and Institutions Code section 15600 et seq.

268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196], italics added.) We must construe the language of a statute " 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218], quoting *People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

■ "It is well settled in California that 'the Legislature has full control of the subject of marriage and may fix the conditions under which the marital status may be created or terminated. . . .' " (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1074 [17 Cal.Rptr.3d 225, 95 P.3d 459], quoting *McClure v. Donovan* (1949) 33 Cal.2d 717, 728 [205 P.2d 17].) The Supreme Court in *McClure* explained: "With the right of action for annulment of a marriage so statutory in nature, *it is for the Legislature to prescribe when and by whom such litigation may be commenced . . . .*" (*McClure v. Donovan*, at p. 728, italics added; see also *Estate of Gregorson* (1911) 160 Cal. 21 [116 P. 60] (*Gregorson*).)

We first dispose of Elizabeth's claim that the marriage of Jennifer and Richard was void rather than voidable, and therefore subject to collateral attack. Her theory is that the confidential marriage license was forged and therefore rendered the marriage illegal. *Estate of DePasse* (2002) 97 Cal.App.4th 92 [118 Cal.Rptr.2d 143], on which Elizabeth relies, is distinguishable. In that case, a couple who had lived together was married without a marriage license because of the alleged wife's illness and imminent death. In a probate action involving the alleged husband's claim to half his wife's estate, the Court of Appeal held that the issuance of a marriage license is mandatory for a valid marriage in California. (*Id.* at pp. 95, 102–103.)

Here, Elizabeth acknowledges a marriage license was issued, but claims Richard's signature was forged. This brings her action within the fraud provisions of § 2210, which we next discuss. Section 2200 provides that incestuous marriages are void, and section 2201 provides that bigamous and polygamous marriages are either void or voidable "depending on the circumstances." (*Estate of DePasse, supra,* 97 Cal.App.4th at pp. 105–106.) In contrast, fraud is a ground which may render a marriage voidable under section 2210. (*Estate of DePasse,* at p. 106; see also *Gregorson, supra,* 160 Cal. at p. 26 [contrasting validity under predecessor of § 2210 with "[a] marriage prohibited as incestuous or illegal and declared to be 'void' or 'void from the beginning' " as a legal nullity whose validity may be asserted in any proceeding in which the fact of marriage may be material].)

■ Section 2210 provides that marriages are voidable and may be adjudged a nullity if specified conditions existed at the time of the marriage.

These include: (1) where one or both parties were minors and did not have the consent of a parent to marry (§ 2210, subd. (a)); (2) bigamy (§ 2210, subd. (b)); (3) where one party is of unsound mind (§ 2210, subd. (c)); (4) where the consent of either party was obtained by fraud (§ 2210, subd. (d)); (5) or by force (§ 2210, subd. (e)); and (6) where either party was physically incapable of entering into the marriage, and the incapacity appears incurable (§ 2210, subd. (f)).

Section 2211 is the companion to section 2210. The introductory sentence of that statute provides: "A proceeding to obtain a judgment of nullity of marriage, for causes set forth in Section 2210, *must* be commenced within the periods *and by the parties*, as follows . . . ." (§ 2211, italics added.) This passage plainly and unambiguously defines not only the limitations periods for nullity actions based on various grounds, but standing as well. We disagree with Elizabeth's strained reading of this passage, to the effect that "must" is not mandatory. The limitations period and standing provisions differ, depending on the ground for annulment invoked.

■ Elizabeth argues Jennifer fraudulently induced Richard to marry her in 2001. A proceeding to nullify a marriage for fraud must be commenced *"by the party whose consent was obtained by fraud*, within four years after the discovery of the facts constituting the fraud." (§ 2211, subd. (d), italics added.) The plain meaning of this language is that only a defrauded spouse may institute an action for annulment based on fraud, within four years of discovery of the fraud.

An examination of the other subdivisions of section 2211 demonstrates that the Legislature chose to broaden standing to seek an annulment in certain other circumstances. For example, subdivision (a) addresses actions where a party or parties marry before the age of consent. Until the minor spouse reaches the age of consent, a parent, guardian, conservator, or other person having charge of the underage person may seek annulment. After the married minor reaches the legal age of consent, he or she has four years to seek annulment.[5] (§ 2211, subd. (a).) Similarly, where one of the spouses is of unsound mind, an annulment may be sought by the injured party, or a relative or conservator of the party of unsound mind. (§ 2211, subd. (c).)

In contrast, in circumstances where the spouse seeking an annulment is capable of protecting his or her interests, only that spouse has standing to initiate annulment under section 2211. (§ 2211, subds. (d) [fraud], (e) [consent to marriage obtained by force], (f) [physical incapacity].) Where bigamy

---

[5] If the person who married freely cohabits with the other spouse as husband and wife after reaching the age of consent, the marriage is no longer voidable by annulment. (§ 2210, subd. (a).)

is the ground for annulment, the former husband or wife is given standing to seek annulment of his or her spouse's second, bigamous marriage as is either spouse of the bigamous marriage. (§ 2211, subd. (b).)

■ "Where statutes involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' [Citation.]" (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825 [81 Cal.Rptr.3d 461].) ■ The language of section 2211 establishes that the Legislature treated the various grounds for annulment differently with respect to standing. By choosing to extend standing to third parties acting for one of the spouses only where a spouse is a minor or is of unsound mind, the Legislature expressed its intent that the injured spouse has exclusive standing to commence an action for annulment based on fraud, force, or physical incapacity.

In addition to enacting distinct provisions for standing, the Legislature also provided different limitations periods, depending on the ground for annulment. Elizabeth argues that since subdivision (d) of section 2211 (fraud) does not expressly require that a nullity action be commenced within the lifetime of one of the spouses, as do subdivisions (b) (bigamy) and (c) (unsound mind), it must be interpreted to allow survival of a nullity action based on fraud. She contends that had the Legislature intended to restrict a nullity action based on fraud to the lifetime of one or both of the spouses, it could have used the limiting language employed in section 2211, subdivisions (b) and (c). We note that the provision on bigamy actually draws a distinction between an action commenced by a party to the second, bigamous marriage, which must be brought by "[e]ither party during the life of the other" and an action commenced by the former husband or wife, which has no express limitations period.[6] (§ 2211, subd. (b).)

■ We do not agree with Elizabeth's argument. In light of the clause in section 2211, subdivision (d) providing that an action for nullity based on fraud must be commenced by the defrauded spouse, we conclude that it was unnecessary for the Legislature to state that annulment had to be sought in the lifetime of one or both spouses. Such a clause would have been redundant.

---

[6] Section 2211, subdivision (b) on annulment of a bigamous marriage provides that an annulment may be sought by "(1) Either party during the life of the other. [¶] (2) The former husband or wife."

B. *General Rule of Survival of Cause of Action*

■ Elizabeth also argues this case is governed by the general rule that a cause of action survives the death of the plaintiff under Code of Civil Procedure section 377.20, subdivision (a). That statute provides: "(a) *Except as otherwise provided by statute*, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period. . . ." (Italics added.) Here, section 2211, subdivision (d) is a statute that "otherwise provide[s]" as contemplated by Code of Civil Procedure section 377.20, because it states that an action for nullity based on fraud must be commenced by the defrauded spouse.

■ We conclude that the specific language of section 2211, subdivision (d) governs the general language of Code of Civil Procedure section 377.20. " ' "It is well settled . . . that a general provision . . . is controlled by one that is special . . . , the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." [Citation.]' (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].)" (*Brandon S. v. State of California ex rel. Foster Family Home etc. Ins. Fund* (2009) 174 Cal.App.4th 815, 826 [94 Cal.Rptr.3d 660].)

Our conclusion that the language of section 2211, subdivision (d) controls is supported by the rationale in *In re A.C.* (2000) 80 Cal.App.4th 994 [96 Cal.Rptr.2d 79]. That case arose from a dependency action filed because of the father's sexual abuse of his five daughters. Nine years after custody of the daughters was awarded to their mothers, three of the girls petitioned the court to release and destroy the dependency records pursuant to Welfare and Institutions Code section 826. The parents purported to petition as successors in interest for a deceased daughter, Stefany, for the same purpose. Welfare and Institutions Code section 826, subdivision (a) provides in pertinent part that "Any person who is the subject of a juvenile court record may by written notice request the juvenile court to release the court record to his or her custody. . . ."

The court in *In re A.C., supra*, 80 Cal.App.4th 994 concluded that Stefany's cause of action under Welfare and Institutions Code section 826 did not survive her death and that her parents did not have standing to pursue the petition on her behalf. The court had two reasons for its conclusion. It acknowledged the general rule that a cause of action survives (Code Civ. Proc., § 377.20) and that property passes by the laws of intestate succession (Prob. Code, § 7000), but held that the right to petition for the release of a

juvenile court file was not the type of property interest which survives the death of the subject of the juvenile action. (*In re A.C.*, at p. 1004.)

The second rationale in *In re A.C.* is germane here. The court placed great significance on the express language of Welfare and Institutions Code section 826 limiting standing: "Further, the language of section 826, subdivision (a) also indicates that the Legislature did not intend this cause of action to survive the named minor's death. In pertinent part, that section provides, '[a]ny person who is the subject of the juvenile court record may by written notice request the juvenile court to release the court record to his or her custody.' *Had the Legislature wished to allow a successor in interest or legal representative to proceed under this section, the Legislature could have expressly stated that intent.*" (*In re A.C., supra*, 80 Cal.App.4th at pp. 1004–1005, italics added.)

Similarly, had the Legislature intended that an action for annulment could be commenced by a third party after the defrauded spouse's death, it could have expressly provided for that contingency or eliminated the language in section 2211, subdivision (d) requiring that such a petition be commenced by the defrauded spouse. Here, the Legislature chose neither course.

The Supreme Court in *Gregorson, supra*, 160 Cal. 21 examined the policy issues which led the Legislature to strictly limit standing to annul a marriage: "Whether a marriage . . . should be treated as entirely void, or should be open to attack only in a specific proceeding brought by certain persons, is purely a question of policy for the legislature. The strict rule of absolute nullity may often serve to prevent designing persons who have led an incompetent into a purported marriage, from profiting by the wrong committed. On the other hand, there must be many cases in which a great hardship might be worked on innocent persons if the validity of a marriage which had been treated by the parties as binding could, after the death of one of them or in a collateral proceeding, be questioned by a third party asserting that the purported husband or wife had been of unsound mind at the time of undertaking the marriage. [¶] . . . [T]he legislatures of a number of states have passed statutes designed to render marriages of the kind under discussion [where the parties were of unsound mind] *free from attack except in proceedings for annulment brought by or on behalf of one of the parties. . . .* [¶] We think our own statutes should be construed in like manner. *Under the* [former] *provisions of the Civil Code, a clear distinction is drawn between void marriages and those which are merely voidable, or, as it might perhaps be better expressed, those which are capable of being annulled.*" (*Id.* at pp. 24–25, italics added, citation omitted.) The *Gregorson* court found it significant that marriages challenged on the grounds for annulment stated in the predecessors to sections 2210 and 2211 were not declared void, but instead were described as

voidable by the Legislature. Construing Civil Code former section 82, a predecessor of section 2210, it concluded that the fact that marriages challenged on other grounds, including fraud, were not declared void, "and that the right to have them annulled *is closely limited as to both persons and time indicates clearly the intent of the legislature that these marriages are to be regarded as merely voidable, and that the only manner of avoiding them is that provided by the code. If the parties who are alone recognized by the statutes as entitled to have the marriage annulled do not, during its existence, see fit to avoid it, a stranger to the marriage should not be permitted to question its validity in a collateral proceeding.* This would clearly be the proper interpretation of subdivisions 4 [fraud], 5 [force], and 6 [physical incapacity] of section 82. If the consent of either party had been obtained by fraud or force, or if one of the parties had been physically incapable of entering into the marriage state, no one would contend that in the absence of complaint by the injured party the validity of the marriage could be disputed collaterally." (*Gregorson, supra*, 160 Cal. at pp. 26–27, italics added.)

 The substance of the statutory scheme for annulment has not been significantly changed since the Supreme Court decision in *Gregorson*. In the nearly 100 years which have passed since then, the Legislature has chosen to leave the provisions limiting standing to annul a marriage virtually unchanged. We conclude that Elizabeth lacks standing to attempt to annul the marriage of Richard and Jennifer on the ground of fraud.

## C. *Greene v. Williams*

Our conclusion that Code of Civil Procedure section 377.20 does not compel a determination that Elizabeth has standing to petition to annul Richard's marriage is also supported by *Greene, supra*, 9 Cal.App.3d 559. Robert Greene, while still a minor, married without parental consent. He was killed three months later. After his death, his mother petitioned to annul the marriage on the ground that Robert was a minor. Construing predecessors to sections 2210 and 2211,[7] the Court of Appeal first concluded that a marriage by an underage child without parental consent is merely voidable and remains in full force until dissolved. (*Greene*, at p. 561.) The court reasoned that the marriage irrevocably had been dissolved by Robert's death, and that it did not possess the power to alter the status of the parties to the marriage by a decree of annulment. (*Id.* at p. 562.)

---

[7] Civil Code former section 4425 was a predecessor to section 2210. (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (2004 ed.) foll. § 2210, p. 245.) The predecessor to section 2211 was Civil Code former section 4426, which was not substantively changed when section 2211 was enacted. (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code, *supra*, foll. § 2211, p. 256.)

The mother in *Greene* argued that she had a property right to annul the marriage which survived Robert's death. Rejecting the applicability of the general rule that a cause of action survives the plaintiff's death (now see Code Civ. Proc., § 377.20, subd. (a)),[8] the *Greene* court concluded that the rule does not apply to matrimonial causes even if one of the parties was a minor when the marriage was performed. (*Greene, supra*, 9 Cal.App.3d at p. 563.) It held: "[A]n adult's cause of action for divorce or for annulment does not survive his own death. [Citations.] The general rule of survivability of causes of action (Prob. Code, [former] § 573) does not apply to matrimonial causes. (*Poon* v. *Poon* [(1966) 244 Cal.App.2d 746 [53 Cal.Rptr. 365]].) We think a minor's right to seek annulment is subject to the same rule. Even if his cause of action is considered a right of property, it is one which terminates with his death. Since the right expires on the death of the minor child, nothing survives to pass to the parent, for a successor right of action cannot be longer-lived than the right from which it derives." (*Ibid.*) The court also refused to recognize an independent property right belonging to the mother to annul the marriage. (*Id.* at pp. 563–564.)

Elizabeth criticizes *Greene* and argues that its reliance on *Poon* v. *Poon, supra*, 244 Cal.App.2d 746 is misplaced because that case does not stand for the proposition for which it is cited in *Greene*—that the general rule of survivability does not apply to matrimonial causes of action. In *Poon*, a wife had filed for divorce and alleged causes of action seeking to settle her rights to various parcels of realty as well as other assets, claiming she had been defrauded by husband. In the midst of trial, the husband killed her. The administrator of the wife's estate sought to substitute into the action.

The Court of Appeal in *Poon* distinguished between the divorce action and the causes of action related to property rights. "It is clear from a reading of section 573 of the Probate Code, which was amended to state a comprehensive rule of survivability, that it has broadened rather than restricted the general rule of survivability." (*Poon* v. *Poon, supra*, 244 Cal.App.2d at p. 753, fn. omitted.) After quoting Witkin's statement that " 'all causes of action now survive' " (italics omitted) under former section 573,[9] the *Poon* court reiterated its disagreement with that broad assertion and held "the rule of survivability is not as broad as stated by Witkin in view of the decisional law that an action for divorce involving the status of the parties abates upon the death of one of the spouses . . . ." (244 Cal.App.2d at p. 753.) It went on to hold that property actions of every kind survive. (*Ibid.*) The court in *Poon*

---

[8] The *Greene* court construed Probate Code former section 573, the predecessor survival statute whose substance is restated in Code of Civil Procedure section 377.20, subdivision (a). (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (2004 ed.) foll. § 377.20, p. 108.)

[9] Witkin, California Procedure (1965 supp.) Actions, section 177A, page 288; now see 3 Witkin, California Procedure (5th ed. 2008) Actions, section 15, page 76.

thus squarely held that a matrimonial cause of action does not survive. *Greene* extended this rule to annulment causes of action, a ruling consistent with the language of section 2211. The fact that *Greene* involved annulment based on minority rather than fraud does not change the broad rule reached in that case, as Elizabeth argues.

■ We agree with the analysis in *Greene* and conclude that it applies here. Since a third party is never accorded standing to seek annulment based on fraud, the cause of action does not survive the death of the defrauded spouse.

## D. *Goldberg*

The trial court harmonized the holdings in *Greene, supra*, 9 Cal.App.3d 559 and *Goldberg, supra*, 22 Cal.App.4th 265, a case in which an action for annulment on the ground of fraud was commenced by the husband but was still pending at his death. In *Goldberg*, the Court of Appeal held that the nullity action survived the husband's death under these circumstances and that the administrator of his estate should have been allowed to substitute into the annulment action. (*Id.* at pp. 276–277.) Elizabeth argues that the rationale of *Goldberg* did not turn on the decedent's initiation of the annulment. Instead, she argues the key was that the annulment potentially would resolve conflicting claims to the decedent's estate. She acknowledges that the authorities cited in *Goldberg* "involved cases where an action was initiated before the decedent's death."

In *Goldberg*, the trial court had denied a motion by the special administrator of the husband's estate to substitute himself in as petitioner in the annulment action on the ground that the nullity action did not survive the husband's death. (*Goldberg, supra*, 22 Cal.App.4th at p. 267, citing *Greene, supra*, 9 Cal.App.3d 559.) In reversing, the *Goldberg* court distinguished *Greene* on two grounds: (1) the annulment action in *Greene* was not initiated by one of the spouses, while in *Goldberg* the husband had initiated the annulment; and (2) no identified property issues were addressed in *Greene* while in *Goldberg* such issues were presented. (22 Cal.App.4th at p. 267.) It placed great weight on the husband's decision to petition for annulment based on fraud before his death. (*Id.* at p. 269.) The court also observed that significant financial consequences would follow from the determination of the annulment issue because the decedent died intestate, so his widow would inherit if the marriage was not annulled, while nieces and nephews would inherit if it was. (*Ibid.*)

The *Goldberg* court emphasized that Probate Code former section 573 on the survival of causes of action was implicated only because the husband had

initiated the annulment before his death. (*Goldberg, supra*, 22 Cal.App.4th at p. 272, citing Civ. Code, former § 4426, subd. (d), the predecessor of § 2211, subd. (d).) "[T]he applicable statute requires that an action for nullity of marriage, based on fraud, must be initiated by the party alleged to be the victim of the fraud and that such action must be commenced within four years of discovery of the fraud. (Civ. Code, former § 4226, subd. (d).) *Here the action for nullity of marriage . . . was initiated by the decedent and well within the period of limitation. That brings us back to the application of [former] section 573 of the Probate Code.* None of the authorities cited and relied upon by respondent involve an action for nullity of marriage, based on fraud, *brought by a decedent in his or her lifetime.*" (22 Cal.App.4th at p. 272, italics added.)

Finally, after reviewing *Poon v. Poon, supra*, 244 Cal.App.2d 746 and other authorities holding that causes of action relating to recovery of property survive the death of one party to a marriage, the *Goldberg* court again emphasized that its decision turned on the fact that the husband had initiated the annulment: "These . . . cases clearly announce a policy of the law in this state that the death of one party to a marriage does not preclude the later resolution of property issues *raised in litigation pending before the death.*" (*Goldberg, supra*, 22 Cal.App.4th at p. 276, italics added.)

In this case, unlike *Goldberg*, no action for nullity based on fraud was commenced by Richard and, therefore, there was no action which survived under Code of Civil Procedure section 377.20, the successor to Probate Code former section 573. Since section 2211, subdivision (d) was not satisfied, the general survival rule cannot confer standing on Elizabeth.

### E. Tolling

Elizabeth also argues that the statute of limitations for bringing the annulment action based on fraud was tolled until she discovered the confidential marriage and changes to Richard's estate plan. But as we have discussed, the tolling provision applies only to an action commenced by Richard, not to an action brought by a third party who lacks standing. This conclusion also disposes of Elizabeth's alternative arguments that the statute of limitations was tolled by Richard's disability and by Jennifer's fraudulent concealment of her fraudulent actions.

### F. Code of Civil Procedure section 338

Elizabeth contends we should look to the statute of limitations for a cause of action based on fraud (Code Civ. Proc., § 338) as indicative of the Legislature's intent in enacting section 2211, subdivision (d). She points out

that both statutes were originally codified in 1872. Without citing authority, she argues a cause of action for fraud survives the death of a party. In the same argument she cites authority that a personal representative of a decedent had a duty to set aside fraudulent conveyances of estate property (citing *Estate of Denton* (1971) 17 Cal.App.3d 1070, 1075 [95 Cal.Rptr. 347]). From this, she asks us to conclude "that the same duty should apply to decedent's personal representatives or their successors in interest for nullity actions, where significant property issues are at stake." Elizabeth also cites authority allowing heirs, successors in interest or personal representatives to commence an action for fraud where the decedent did not discover the fraud during his or her lifetime. She asks us to hold that a cause of action under section 2211, subdivision (d) does not accrue until discovery of the facts, "even if they remain undiscovered until after the defrauded spouse's death" on the ground that such a ruling would be consistent with Code of Civil Procedure section 338.

These authorities might be relevant if this were an action directly seeking to recover assets of Richard's estate. But as we have discussed, it is instead an action for nullity, which must be brought by the defrauded spouse. To allow delayed accrual of the cause of action for nullity based on fraud until after the death of the defrauded spouse would eviscerate the standing provision of section 2211, subdivision (d). The Legislature is empowered to make such a change in the law; we are not.

### G. Policy Arguments

Finally, Elizabeth contends that new public policy concerns are presented here which were not considered in *Greene* because after that case was decided, the Elder Abuse Act was enacted to protect elders and dependent adults from exploitation and abuse. Elizabeth argues that her petition is not about the status of Richard's marriage, as was the case in *Greene*, but instead is about the disposition of his estate, a matter that comes within the Elder Abuse Act because Jennifer formerly served as Richard's caregiver.

We conclude that Elizabeth's public policy argument is more properly addressed to the Legislature than to the courts. Originally enacted in 1982, the Elder Abuse Act established requirements and procedures for reporting elder abuse and the abuse of other dependent adults. (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 779 [11 Cal.Rptr.3d 222, 86 P.3d 290].) The statute was amended in 1991 to allow recovery of attorney fees, costs, and heightened civil remedies. (*Id.* at pp. 779–780.) Elizabeth's concerns about caregivers inducing their dependents into confidential marriages in order to gain influence over their estates implicates the policy of protecting elders and dependent adults from exploitation. Although the Elder

Abuse Act has been amended almost annually[10] the Legislature has not chosen to give a third party standing to annul the marriage of a dependent adult on the ground of fraud.

In sum, after the court in *Greene, supra,* 9 Cal.App.3d 559, determined that a cause of action for annulment did not survive the death of the minor spouse even though other causes of action survive, the Legislature chose not to amend section 2211, subdivision (d) or the Elder Abuse Act to confer standing on a third party to bring an annulment action based on fraud as successor to a dependent or elder adult. We are not persuaded by Elizabeth's argument that *Greene* concerned only annulment based on minority rather than fraud, and therefore there was no case law relevant to our issue of which the Legislature must have been aware. *Greene* established that "[t]he general rule of survivability of causes of action (Prob. Code, [former] § 573) does not apply to matrimonial causes" including annulment. (9 Cal.App.3d at p. 563.) It is this basic proposition which the Legislature has not addressed by amendment since *Greene* was decided.

 "[T]he Legislature is deemed to be aware of judicial decisions already in existence and to have enacted or amended a statute in light thereof. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it. (*City of Long Beach v. Workers' Comp. Appeals Bd.* (2005) 126 Cal.App.4th 298, 318–319 [23 Cal.Rptr.3d 782]; *People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705].)" (*Estate of Heath* (2008) 166 Cal.App.4th 396, 402 [82 Cal.Rptr.3d 436].) We therefore conclude that the Legislature was aware that a third party may not initiate a petition for annulment based on fraud under section 2211, subdivision (d) after the death of the defrauded spouse and was content to leave that rule in place.

In light of our conclusion that Elizabeth lacks standing to petition for annulment of the marriage between Richard and Jennifer, we need not reach the alternative arguments raised in the briefs.

---

[10] Various provisions of the Elder Abuse Act were amended in 1985 (Stats. 1985, chs. 1120, 1164, pp. 3762, 3916); 1986 (Stats. 1986, ch. 769, p. 2531); 1991 (Stats. 1991, ch. 774, p. 3475); 1994 (Stats. 1994, ch. 594, p. 2932); 1996 (Stats. 1996, ch. 1075, p. 7212); 1997 (Stats. 1997, chs. 663, 724); 1998 (Stats. 1998, chs. 946, 980); 1999 (Stats. 1999, ch. 236); 2000 (Stats. 2000, chs. 442, 559, 813); 2002 (Stats. 2002, ch. 54); and 2008 (Stats. 2008, ch. 475).

## DISPOSITION

The order dismissing Elizabeth's annulment petition is affirmed. Respondent is to have her costs on appeal.

Manella, J., and Suzukawa, J., concurred.