[No. A083625. First Dist., Div. One. May 24, 1999.]

BANK OF AMERICA, as Trustee, etc., Plaintiff, v.
ANGEL VIEW CRIPPLED CHILDREN'S FOUNDATION et al.,
Defendants and Appellants;
ALAN D. LIKER, Defendant and Respondent.

**COUNSEL**

Jackson, Tufts, Cole & Black, Charles G. Stephenson, Kenneth J. Philpot and Mark A. Sheft for Defendants and Appellants.

Hillel Chodos for Defendant and Respondent.

## Opinion

**MARCHIANO, J.**—Probate Code section 21350 presumptively invalidates a donative transfer to an attorney-beneficiary who drafted the instrument providing for the gift. Probate Code section 21351 permits the transfer if, inter alia, the drafter-beneficiary can show by clear and convincing evidence that the transfer was not the result of fraud, menace, duress or undue influence. In this case we hold that these statutes, enacted in 1993, apply retroactively.

Three residual beneficiaries of a living trust—Angel View Crippled Children's Foundation, St. Jude Hospital, and Heartspring, Inc.—appeal from an order of the probate court insofar as it allows the drafter of the trust instrument, respondent Alan D. Liker, Esq., to receive a distribution as a beneficiary of the trust. Because Probate Code section 21350 is applicable to the transfer in this case and because a hearing under section 21351 is required, we reverse and remand.

### I. Facts

On July 5, 1974, Forrest and Glenda Shaklee established a living trust known as the Forrest Clell Shaklee, Jr., and Glenda Belle Shaklee Trust No. 1.[1] By the express terms of the trust instrument, this trust was revocable and subject to amendment by the trustors. The Shaklees twice amended the trust, once on December 14, 1979, and again on May 24, 1985. The 1985 amendment expressly recites that the trust can be revoked or amended. The 1985 amendment also names over two dozen beneficiaries of the substantial assets of the trust. The beneficiaries include respondent, who is to receive a cash distribution of $50,000 plus 6 percent of the trust residue. It is undisputed that respondent, apparently a lifelong Shaklee family friend and legal adviser, drafted the 1985 amendment. The Forrest Clell Shaklee, Jr., and Glenda Belle Shaklee Trust No. 1., as amended in 1985, is hereafter referred to as "the Parents' Trust."

Forrest and Glenda's son, Clifford Shaklee, established his own living trust, the Clifford J. Shaklee Trust No. 1 (hereafter Clifford's Trust), on July 30, 1974. He amended Clifford's Trust on December 14, 1979, to provide that on his death the Clifford's Trust assets would be held for the benefit of Forrest and Glenda Shaklee, "so long as they shall live," provided that his

---

[1]Since the time that Shakespeare wrote, "Let's choose executors and talk of wills" (Shakespeare, Richard II, act III, scene 2), many people have turned instead to the living trust as the principal way of distributing their assets after death. (See Drafting Cal. Revocable Living Trusts (Cont.Ed.Bar Supp. 1998) § 3.1, pp. 3-2–3-3.)

parents "could not distribute or cause to be distributed any of the income or principal of [Clifford's Trust] to themselves, their estates, their creditors, or the creditors of their estates, except . . . for their proper support and medical and health care." Following the death of the survivor of Forrest and Glenda, virtually all the assets of Clifford's Trust were to be distributed outright to the Parents' Trust.

Clifford Shaklee died on April 6, 1985. On October 2, 1986, Forrest and Glenda Shaklee executed an instrument entitled "Partial Revocation of the Forrest Clell and Glenda Belle Shaklee Trust No. 1." By this instrument Forrest and Glenda Shaklee partially revoked the Parents' Trust by withdrawing all trust assets and transferring them to a new trust, the 1986 Forrest and Glenda Shaklee Trust, created that same day. The Parents' Trust, now essentially an empty shell without assets, was to "continue" for the purpose of receiving the assets of Clifford's Trust in accordance with the Clifford's Trust terms, i.e., on the death of the survivor of Forrest and Glenda Shaklee.

The last paragraph of the partial revocation recites that Forrest and Glenda "hereby acknowledge that they do not have any power to alter the plan of disposition [of Clifford's Trust] and therefore are not in this instrument in any way exercising any such power or in any way amending the plan of disposition or any of the other terms set forth in the [Clifford's Trust]." The partial revocation does not state that it, or the Parents' Trust, is irrevocable. It is undisputed that respondent also drafted this document. Indeed, the Parents' Trust instrument continued to state that it was revocable in paragraph 5.1.

Glenda Shaklee died on March 31, 1994. Forrest Shaklee died on September 26, 1995. On November 25, 1997, the probate court administering Clifford's Trust ordered that all the assets of Clifford's Trust be distributed to Bank of America (the Bank), as trustee of the Parents' Trust, and in turn to be distributed to the beneficiaries of the Parents' Trust according to that trust's terms.

The Bank was uncertain whether certain beneficiaries were entitled to distribution, and if so in what amounts. Accordingly, the Bank filed a petition for instructions with the probate court. The Bank's petition raised the issue whether respondent was entitled to a distribution as a beneficiary of the Parents' Trust, in light of Probate Code sections 21350 and 21351.[2]

Respondent invoked section 21355, which provides that sections 21350 and 21351 only apply to instruments which became irrevocable on or after

[2]All subsequent statutory citations are to the Probate Code.

September 1, 1993. Respondent claimed the Parents' Trust became irrevocable before that date, either on Clifford's death on April 6, 1985, or on the date the partial revocation was executed, October 2, 1986. Respondent based his claim of irrevocability on the premise that Forrest and Glenda Shaklee could not alter the terms of the disposition of Clifford's Trust after Clifford had died, or after reciting in the partial revocation they had no power to make such an alteration. Respondent did not argue that sections 21350 and 21351 could not apply retroactively to instruments executed in 1985 and 1986. Indeed, he seemingly agreed that the statutes applied to instruments which became irrevocable on or after September 1, 1993, even if executed before that date.

In reply, the Bank, as petitioner below, suggested that respondent should be precluded from receiving a distribution because the Parents' Trust did not become irrevocable any earlier than March 31, 1994, the date of Glenda Shaklee's death. The Bank contended that although unable to alter the terms of *Clifford's Trust*, Forrest and Glenda retained the power to revoke or amend their own trust by changing the complex scheme of Parents' Trust beneficiaries. Thus, the Parents' Trust became irrevocable after September 1, 1993, and sections 21350 and 21351 therefore applied.

At the hearing on the petition, the probate court raised sua sponte the question of statutory retroactivity, which had not been raised by any party: "This all relates to activity of Mr. Liker that preceded by quite a while the enactment of section 21350. . . . [¶] I don't know of any case that discusses the ex post facto aspect of [section] 21350 and whether it is intended to prohibit prospective behavior, or whether it is intended to reach back and invalidate bequests made whenever they are made, provided that the trust to which they pertain is . . . irrevocable [on or after September 1,] 1993. [¶] But I'm satisfied in circumstances like this that it should not be applied to prohibit the bequest of Mr. Liker, and that is my ruling." The court expressly stated it was not making a determination whether the Parents' Trust was revocable or irrevocable as a result of the partial revocation.

## II. Discussion

As noted, section 21350 presumptively invalidates a donative transfer in any instrument where the transferee drafted that instrument. (§ 21350, subd. (a)(1).) The purpose of the statute is to prevent unscrupulous persons in fiduciary relationships from obtaining gifts from elderly persons through undue influence or other overbearing behavior. (See *Graham* v. *Lenzi* (1995) 37 Cal.App.4th 248, 256 [43 Cal.Rptr.2d 407].) In cases where the transferee

drafts the very instrument of his gift, the normal burden of proof on the issue of undue influence is shifted to the transferee. (*Ibid.*) Section 21351, subdivision (d), provides that the drafter-transferee's gift is valid if "[t]he court determines, upon clear and convincing evidence, excluding the testimony of [the drafter] . . . that the transfer was not the product of fraud, menace, duress, or undue influence. . . ."[3]

We must first determine whether sections 21350 and 21351 retroactively apply to trust instruments drafted in 1985 and 1986. We respectfully disagree with the trial court's ruling and hold that the statutes are retroactive.[4]

Statutes only operate prospectively unless the Legislature clearly intends retroactive application. (*Western Security Bank* v. *Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) Such an intent may be found in " '. . . express language or clear and unavoidable implication . . . .' " (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585], quoting *Glavinich* v. *Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 272 [209 Cal.Rptr. 266].) The intent may be "suggested or implied by the wording of the statutory provisions. [Citation.]" (*Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 818 [230 Cal.Rptr. 102].) An intent of retroactive application may also be inferred from the legislative history or the context of the enactment. (44 Cal.3d at p. 1210; see *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].)

The Legislature did not expressly declare sections 21350 and 21351 retroactive, but did expressly declare that they "shall apply to instruments that become irrevocable on or after September 1, 1993." (§ 21355.) Imbedded in such a declaration is a clear intent that the sections are to have retroactive application. The Legislature was surely aware that a multitude of California trust and other instruments containing donative transfers *which had already been drafted* would be governed by this date of applicability—particularly, revocable living trusts which would become irrevocable by the death of the trustor on or after September 1, 1993. As appellants observe, the

---

[3]The drafter-transferee could also save his gift by showing a blood relationship with the transferee, producing a certificate of independent review by an attorney who attests the donative transfer was free of fraud, menace, duress or undue influence, or by satisfying other minor exceptions to section 21350's presumptive ban. (§ 21351, subds. (a), (b), (c), (f).)

[4]Appellants contend we need not even reach this issue because respondent essentially agreed in the trial court that the statutes applied retroactively. The issue, however, was the basis of the trial court's ruling and we cannot resolve this case ignoring the issue of retroactivity.

Legislature could have rendered sections 21350 and 21351 applicable to instruments *which were executed* after September 1, 1993, but chose not to. Furthermore, the Legislature expressly made subdivision (d) of section 21351 applicable to "Any instrument executed on or before July 1, 1993, by a person who was a resident of the state at the time the instrument was executed." (§ 21351, subd. (e)(C).)

It is clear from the text of the statutes that the Legislature intended their retroactive application. This intent is also clear from the context of the enactment, specifically its remedial purpose. Citing a Senate Rules Committee Floor Analysis of the legislation, the *Graham* court observed: "In enacting sections 21350 and 21351, the Legislature was aware that certain individuals are uniquely positioned to procure gifts from elderly persons through fraud, menace, duress or undue influence. [Citation.] To prevent such individuals from taking advantage of trustors and testators, the Legislature shifted the normal burden of proof in establishing an undue influence claim. [Citation.]" (*Graham* v. *Lenzi, supra,* 37 Cal.App.4th at p. 256.) The remedial nature of the statute, and the " 'evils to be remedied,' " can be taken into account when reviewing a statute for an implied retroactive intent. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 587-588, quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) Moreover, section 21351, subdivision (e), states that subdivision (d) (court determination of the validity of the transfer) shall apply only to instruments "executed on or *before* July 1, 1993," indicating an intent for retroactive review inasmuch as the statutes were not operative until January 1994.

Here, the Legislature recognized a vital need to protect vulnerable transferors from the undue influence of trusted advisers undeserving of their trust. It is eminently reasonable to conclude the Legislature would intend to apply its remedy to instruments which had already been executed. The Legislature provided the drafter-beneficiary with the opportunity to appear at a hearing and defend the instrument as free of undue influence, albeit while bearing the burden of proof.[5]

Of course, a statute cannot be retroactively applied to the detriment of due process. (*Western Security Bank* v. *Superior Court, supra,* 15 Cal.4th at p. 243.) Although we do not belabor the point here, a retroactive statute generally offends due process by impairing a contract or a vested property

---

[5]We recognize that when a statute shows no clear retroactive intent from its text, its remedial nature, standing alone, is insufficient to overcome the presumption against retroactivity. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1213, fn. 17.) That is not the case here.

right with insufficient justification. (See *In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 591-594; *Russell* v. *Superior Court, supra,* 185 Cal.App.3d at pp. 814-815.) We find no due process violation in this case because respondent did not have a vested right in his distribution under the Parents' Trust or the 1986 partial revocation. As we shall conclude below, those instruments were revocable at least until the 1994 death of Glenda; thus, respondent's distribution could have been altered or eliminated by the trustors at any time prior thereto. (§ 15800, subd. (a); Cal. Law Revision Com. com., 54 West's Ann. Probate Code (1990 ed.) § 15800, pp. 644-645; cf. *Estate of Giordano* (1948) 85 Cal.App.2d 588 [193 P.2d 771] [new probate provision could not have retroactive effect because it was enacted after the property rights of the heir vested on the death of the decedent].)

■ Having found that sections 21350 and 21351 apply retroactively, we now decide whether in this particular case respondent can escape the requirements of the statutes on the contention that the Parents' Trust became irrevocable before September 1, 1993.[6]

All voluntary trusts in California are revocable unless made expressly irrevocable by their terms. (§ 15400; 1 Drafting Cal. Irrevocable Trusts (Cont.Ed.Bar Supp. 1998) § 8.6, pp. 268-269.) The Parents' Trust, as it existed after the 1985 amendment, did not expressly state it was irrevocable—indeed, it expressly stated that it was revocable by Forrest and Glenda Shaklee. Likewise, the partial revocation of 1986 did not expressly state that the Parents' Trust was made irrevocable by that instrument. The partial revocation said only that Forrest and Glenda had no power to change the terms of the trust of their son Clifford.

This ends our inquiry by leading us to the conclusion the Parents' Trust remained revocable at least until the 1994 death of Glenda Shaklee. (§ 15800.) Respondent, however, makes three arguments in favor of irrevocability prior to September 1, 1993. First, he contends the Parents' Trust became irrevocable on the death of Clifford, because from that point on Forrest and Glenda could not alter the terms of disposition of Clifford's Trust. Respondent may be misfocusing. Although Forrest and Glenda could not alter the terms of the their son's trust, they could alter the terms of their own. The Clifford's Trust assets would be held for them until they both died, and then pour over into the Parents' Trust. However, Forrest and Glenda retained the power to revoke or amend the Parents' Trust by, e.g., changing

---

[6]Although the probate court did not reach this issue we review it here. "It is judicial action and not judicial reasoning which is the subject of review." (*El Centro Grain Co.* v. *Bank of Italy, etc.* (1932) 123 Cal.App. 564, 567 [11 P.2d 650].)

the identity of a beneficiary or the amount or nature of their bequest. Simply put, nothing could change the fact that the Clifford's Trust assets would go to the Parents' Trust, with certain limitations—but it was still up to Forrest and Glenda to decide where they went from there.[7]

Second, respondent urges that the 1986 partial revocation rendered the Parents' Trust irrevocable by virtue of its recitation that Forrest and Glenda had no power to change the disposition plan of Clifford's Trust. As noted, that plan was simply the pouring over of the assets of Clifford's Trust to the Parents' Trust. The partial revocation does not state that from that point forward the disposition plan of the Parents' Trust could not be changed. Ironically, the lawyer who drafted that instrument now asks us to *read* into a document language he failed to *write* into it. This we cannot do.

Finally, respondent asks us to assume irrevocability from the post-1986 conduct of Forrest and Glenda Shaklee. Respondent presents no legal authority for his novel concept of "irrevocability by conduct," which flies in the face of the clear statement of section 15400 and the language in the trust instruments themselves.

Because the Parents' Trust became irrevocable after September 1, 1993, respondent's gift is presumptively invalidated unless he can satisfy the requirements of section 21351. Since subdivision (d) of that section may apply in this case, respondent has the right to a hearing at which he can present evidence that the donative transfer was not the result of fraud, menace, duress or undue influence. We disagree with appellants' claim that respondent waived his right to that hearing. The record does not support a waiver by the respondent. We therefore reverse and remand so that such a hearing may be held.

## III. DISPOSITION

The order of the probate court, insofar as it allows the donative transfer to respondent, is reversed. The matter is remanded for the limited purpose of

---

[7]In a brief paragraph, apparently referring to Clifford's Trust, respondent states that "A trust which is otherwise irrevocable, but which provides the beneficiary with the right to receive all the income for life, and grants the trustee the limited right to invade the corpus for the beneficiary's support and health and medical needs to the extent the income is insufficient, is nevertheless irrevocable as to the corpus." Respondent cites *DiMaria* v. *Bank of California* (1965) 237 Cal.App.2d 254 [46 Cal.Rptr. 924], for this statement, which is neither an entirely accurate summation of the *DiMaria* case nor pertinent to the present appeal.

Respondent also contends appellants are estopped from arguing that the Parents' Trust became irrevocable after September 1, 1993, because they have taken a contrary position in litigation pending in the Superior Court of Los Angeles County. We have granted respondent's request to take judicial notice of certain filings in that case. They reveal that appellants have not taken a contrary position, and respondent's argument is without merit.

conducting a hearing pursuant to section 21351, subdivision (d). Appellants shall recover their costs on appeal.

Strankman, P. J., and Stein, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 25, 1999. Baxter, J., and Chin, J., did not participate therein.