[No. B207402. Second Dist., Div. Four. Sept. 29, 2009.]

Estate of RICHARD PRYOR, Deceased.
ELIZABETH PRYOR, Petitioner and Appellant, v.
JENNIFER LEE PRYOR, Objector and Respondent.

COUNSEL

Holland & Knight, Bruce S. Ross, Linda Rottman and Vivian L. Thoreen for Petitioner and Appellant.

Kibre & Horwitz, Howard L. Horwitz and Eric G. Stockel for Objector and Respondent.

OPINION

**EPSTEIN, P. J.**—This appeal concerns the presumptive disqualification of a care custodian from receiving a donative transfer from a dependent or elder adult. (Prob. Code, § 21350.)[1] Appellant Elizabeth Pryor, daughter of the decedent, argues that her stepmother, respondent Jennifer Lee Pryor, may not invoke the spousal exception to this presumption because the marriage was the product of undue influence and fraud. (§ 21351.) We find nothing in the statutory scheme or the legislative history which would warrant the judicial creation of an exception to the rule that a spouse may receive a donative transfer. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Elizabeth is one of six children of Richard Pryor, the well-known comedian and actor.[2] Jennifer and Richard married in 1981 and divorced in 1982. Richard was diagnosed with multiple sclerosis in the mid-1980's and his condition deteriorated thereafter. It is undisputed that Jennifer became a care custodian for Richard in 1994. In 2001, four and one-half years before Richard's death in 2005, Richard and Jennifer entered into a confidential marriage. Before and after this remarriage, Richard revised his estate plan to

---

[1] Statutory references are to the Probate Code unless otherwise indicated.

[2] We refer to the parties by their first names to avoid confusion, and intend no disrespect.

leave substantial assets to Jennifer rather than his six children. Apparently Elizabeth did not learn of the remarriage until after Richard's death.

In a companion appeal, *Pryor v. Pryor* (2009) 177 Cal.App.4th 1448 [99 Cal.Rptr.3d 853], we affirmed the denial of Elizabeth's petition to annul the 2001 marriage between Jennifer and Richard on the ground of fraud. This case arises from a probate proceeding brought by Elizabeth. The first amended petition is the charging pleading. We are concerned here only with the fifth and sixth causes of action to set aside donative transfers under section 21350, because Elizabeth has confined her appeal to those claims. These causes of action seek to have various gifts, bequests, and transfers of property or assets made by Richard between 1994 and 2005 declared void under section 21350 because Jennifer's status as care custodian raises a presumption they are invalid.

Jennifer demurred to the first amended petition, invoking section 21351, subdivision (a) which allows a donative transfer by a dependent adult to a spouse. She argued that section 21351, subdivision (a) insulates any transfer to her by Richard from the presumption of invalidity raised by section 21350 regardless of the date of transfer. Elizabeth opposed the demurrer, challenging the validity of the remarriage, and arguing that transfers made by Richard before the remarriage come under section 21350. Her theory was that Jennifer's status as care custodian beginning in 1994 renders her ineligible to receive transfers under section 21350 and that the 2001 marriage does not " 'cancel out' her care custodian status."

The court rejected Jennifer's expansive reading of section 21351, subdivision (a): "The court's read of the statute is not as expansive. The statute centers on a transferor and a transferee and whether they are related by marriage. The legislature's use of the transferor/transferee language suggests that the relevant inquiry is the nature of the parties' relationship at the time of the transfer." The court found support for this interpretation in section 21351, subdivisions (b) and (c) and concluded "There is nothing in the statute that suggests that a transfer might be subject to an after-the-fact exemption. In fact, subdivision (d) suggests that an otherwise prohibited transfer may be exempted later only upon a showing that the transfer was not the result of fraud, menace, duress, or undue influence."

Elizabeth's interpretation of section 21350 also was rejected. The trial court distinguished the cases on which she relied because none involved a formal legal relationship like marriage. In this case, the probate court concluded that the formally recognized marriage between Richard and Jennifer on June 8, 2001, created a bright line unlike the circumstances in the cases cited by Elizabeth. It ruled that this bright line "provides a division for

transfers made before and after that time. [¶] Elizabeth's annulment action is pending. Absent success in that action, transfers to Jennifer from Richard occurring <u>after</u> June 8, 2001 are exempt from attack under Probate Code section 21350. Transfers occurring <u>prior to</u> June 8, 2001 are not."

The demurrer to the fifth and sixth causes of action was sustained to the extent that they alleged transfers to Jennifer after her remarriage to Richard. Elizabeth was given leave to amend at the conclusion of the annulment action and to amend the cause of action to allege only transfers occurring prior to the remarriage.

Elizabeth elected not to amend her petition. Jennifer applied for entry of an order of dismissal with prejudice, which Elizabeth opposed. The probate court granted Jennifer's application and dismissed the action. Elizabeth filed a timely appeal.

## DISCUSSION

### I

Elizabeth chose not to amend her complaint after the trial court sustained Jennifer's demurrer with leave to amend as to premarital gifts. " 'It is the rule that when a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.' [Citations.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Questions of statutory interpretation are subject to de novo review. (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1536 [22 Cal.Rptr.3d 447].)

Jennifer argues that Elizabeth has forfeited her argument because she did not amend her petition to apply to gifts by Richard between their first and second marriages and because she failed to present argument as to those gifts. We agree. (See *Estate of Felder* (2008) 167 Cal.App.4th 518, 523 [84 Cal.Rptr.3d 220] [failure to raise argument on appeal results in waiver of issue].)

## II

## A

■ The issue in this case is one of statutory interpretation. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] *If there is no ambiguity, then we presume the lawmakers meant what they said,* and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*People v. Coronado* [(1995)] 12 Cal.4th [145,] 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' ([Citation]; see *Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223 [60 Cal.Rptr.2d 722, 930 P.2d 979].)" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196], italics added.) We must construe the language of a statute " 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218], quoting *People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

■ Sections 21350 to 21351 were enacted in 1993 in response to reports that a probate attorney had exploited his elderly clients by drafting estate plans for them including large gifts to himself and his confederates.[3] (Recommendation on Donative Transfer Restrictions (Oct. 2008) 38 Cal. Law Revision Com. Rep. (2008) p. 113 (Law Revision Recommendation).) "Part 3.5 of division 11 of the Probate Code (hereafter part 3.5), section 21350 et seq., sets forth certain limitations on donative transfers by testamentary instrument. Section 21350 lists seven categories of persons who cannot validly be recipients of such donative transfers, including, inter alia, '[a] care custodian of a dependent adult who is the transferor' (*id.*, subd. (a)(6)). The statute provides that the term 'care custodian' for these purposes 'has the meaning as set forth in Section 15610.17 of the Welfare and Institutions Code.' (§ 21350, subd. (c).) That section, in turn, defines 'care custodian' by means of a list of described agencies and persons, concluding in its final

---

[3] In 1997 amendments, the Legislature extended the restrictions on donative transfers to gifts made by dependent adults and included care custodians as persons subject to the presumption of invalidity. (Stats. 1997, ch. 724.)

subdivision with '[a]ny other . . . agency or person providing health services or social services to elders or dependent adults.' (Welf. & Inst. Code, § 15610.17, subd. (y).)" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 799–800 [47 Cal.Rptr.3d 248, 139 P.3d 1196], fns. omitted (*Bernard*).)

■  Once it is determined that a person is prohibited under section 21350 from receiving a transfer, " 'section 21351 creates a rebuttable presumption that the transfer was the product of fraud, duress, menace, or undue influence.' " (*Bernard, supra,* 39 Cal.4th at p. 800.) To rebut that presumption, " 'the transferee must present clear and convincing evidence, which does not include his or her own testimony, that the transfer was not the product of fraud, duress, menace, or undue influence. (§ 21351, subd. (d).)' (*Estate of Shinkle* (2002) 97 Cal.App.4th 990, 993 [119 Cal.Rptr.2d 42].)" (*Ibid.*) Section 21351 provides: "Section 21350 does not apply if any of the following conditions are met: [¶] (a) The transferor is related by blood or marriage to . . . the transferee . . . ."

### B

The primary thrust of Elizabeth's argument is that Jennifer may not invoke the spousal exception under section 21351, subdivision (a) because she exercised undue influence and fraud to persuade Richard to marry her in 2001 after she had served as his care custodian for years. Elizabeth analogizes to cases holding that a care custodian who later formed a personal relationship with the transferor is subject to the presumption of invalidity under section 21350. Elizabeth characterizes this principle as the "once a care custodian, always a care custodian" rule.[4] Her theory is that because Jennifer was Richard's care custodian before the 2001 marriage, she cannot erase that status and claim the spousal exception to the presumption of invalidity.

The cases cited by Elizabeth are inapposite because none involved the express spousal exception under section 21350. *Bernard, supra,* 39 Cal.4th 794, involved donative gifts by the transferor to two care custodians who were not health care professionals. Each had a friendship with the transferor which existed before the custodian assumed a caregiving role for the transferor. Relatives of the transferor argued that the transferees were disqualified from receiving a testamentary transfer by reason of their status as care custodians under section 21350, subdivision (a)(6). The *Bernard* court held that "when an *unrelated* person renders substantial, ongoing health services to a dependent adult, that person may be a care custodian . . ." even though the

---

[4] Elizabeth also argues that Jennifer cannot rely on her 1981 marriage to Richard to argue that she had a preexisting relationship with him before becoming his care custodian. As we read it, Jennifer does not make this argument in her brief.

care relationship arose out of a preexisting personal friendship rather than a professional or occupational connection. (39 Cal.4th at p. 797, italics added.) Elizabeth argues in effect that *Bernard* stands for the rule that if a person serves as a care custodian, a donative transfer to that person is presumptively invalid whether or not the care custodian formed a personal relationship with the transferor, either before or after providing services to the transferor.

Elizabeth also cites *Estate of Shinkle, supra,* 97 Cal.App.4th 990, disapproved in part in *Bernard, supra,* 39 Cal.4th 794, 816, footnote 14. Like *Bernard* it did not involve the spousal exception recognized under section 21350. In *Shinkle,* the challenge was to a gift made by the transferor to a former ombudsman at a care facility where she resided until a month and one-half before her death. The ombudsman had been transferred to another facility six months before the challenged trust was executed. He remained in contact with the transferor after he changed jobs. The Court of Appeal held that the ombudsman's status as care custodian did not change after he was transferred or after the transferor was sent home. It reasoned that to rule otherwise would allow care custodians to avoid the restrictions of section 21350 by changing assignments or jobs, or ending their services to the transferor. That result, it concluded, would be contrary to the purpose of section 21350, which is to prevent care custodians from taking advantage of their elderly charges and obtaining gifts through undue influence. (*Estate of Shinkle, supra,* 97 Cal.App.4th at p. 1006.)

Similarly, *Estate of Odian* (2006) 145 Cal.App.4th 152 [51 Cal.Rptr.3d 390], on which Elizabeth relies, did not involve the spousal exception under section 21351, subdivision (a) for spousal transfers. In that case, the elderly transferor made her former live-in companion the sole beneficiary of her estate. The transferor had paid the companion for her services for two years before moving to a nursing home. Following *Bernard,* the Court of Appeal held that the fact that the companion was not a professional care custodian and had never worked in that capacity before was immaterial to her claim that she was not a care custodian under section 21350. (145 Cal.App.4th at p. 164.) It concluded that she was a care custodian, and that the presumption of invalidity under section 21350 applied. (145 Cal.App.4th at p. 167.)

Each of these cases is distinguishable because no express statutory exception applied, as it does here. The courts in *Bernard, Shinkle,* and *Odian* were required to examine the intent of the Legislature to determine whether the provisions of section 21350 extended to persons who had personal relationships with the dependent adult before or after they began providing care services. In each case, the courts refused to create an exception to the statutory scheme. Here, as we have seen, section 21351, subdivision (a) demonstrates the Legislature's intent to allow donative transfers to a spouse.

In *Bernard, supra,* 39 Cal.4th 794, the Supreme Court declined to create an exception to section 21350 based on a personal relationship between the transferor and transferees. It concluded: "[N]othing in the statute's structure, terms or language authorizes us to impose a professional or occupational limitation on the definition of 'care custodian' (Welf. & Inst. Code, § 15610.17) or to craft a preexisting personal friendship exception thereto." (39 Cal.4th at p. 809.) The court concluded that neither the statutory scheme presumptively disqualifying care custodians from receiving a testamentary gift nor the definition of "care custodian" "contains or implies an exception for preexisting personal friends of a dependent adult to whom they provide health care services." (*Bernard, supra,* 39 Cal.4th at p. 810.) It declined to create such an exception where the Legislature had not done so. (*Id.* at pp. 810–811, citing Health & Saf. Code, § 1569.145, subd. (f)(2) [excluding care provided by close preexisting friend from licensing requirements of California Residential Care Facilities for the Elderly Act (Health & Saf. Code, § 1569 et seq.)].) Pointing out that the Legislature had chosen in section 21351, subdivision (a) to exempt transferees related by blood, marriage, domestic partnership or cohabitation from the application of section 21350 (*id.* at p. 811), it held: "[H]ad the Legislature wished also to exempt preexisting personal friends from the definition of care custodian, it could have done so. 'It is the role of the courts to interpret and apply the laws as enacted, not to usurp the legislative function.' " (*Bernard, supra,* at p. 811.)

Like the *Bernard* court, we reject the suggestion that we create an exception to the spousal exception to section 21351, subdivision (a) where the marriage between the transferor and transferee was allegedly obtained by fraud and undue influence. The Legislature did not adopt such an exception, and it is the exclusive province of that body to do so.

Elizabeth protests that she is not asking that we create an exception to section 21351, subdivision (a). Instead, she argues, she is seeking to harmonize sections 21350 and 21351. She argues that care custodians who later marry their charges should have the same burden of proving a donative transfer was not the product of undue influence as other categories of care custodians. Elizabeth cites *Bernard, supra,* 39 Cal.4th at pages 809–810, in which the Supreme Court acknowledged that the purpose of section 21350 was " 'to prevent unscrupulous persons in fiduciary relationships from obtaining gifts from elderly persons through undue influence or other overbearing behavior.' " (39 Cal.4th at p. 809, quoting *Bank of America v. Angel View Crippled Children's Foundation* (1999) 72 Cal.App.4th 451, 456 [85 Cal.Rptr.2d 117].) She argues that an interpretation confined to the plain language of section 21351 would create a loophole by which unscrupulous care custodians could use undue influence to convince their dependent charges to marry them, thus avoiding the protective presumption of section 21350.

Elizabeth urges us to follow the approach of *Shinkle* to conform our interpretation of the statutory scheme to the legislative intent. But as we have discussed, the *Shinkle* court relied on legislative intent to refuse to create a new exception to section 21350. (*Estate of Shinkle, supra,* 97 Cal.App.4th at p. 1006.) We presume the Legislature meant what it said in section 21351, subdivision (a) by providing that the presumption of invalidity raised in section 21350 does not apply where the transferee is married to the transferor. (See *Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191] [where terms of statute are unambiguous, "we presume the lawmakers meant what they said, and the plain meaning of the language governs"].) The Legislature chose not to make any exception for situations where care custodians used undue influence to marry the dependent charge in a scheme to avoid the application of the presumption of invalidity. Such a change requires legislative action. While we recognize the possibility that unscrupulous care custodians might persuade a dependent adult to enter into marriage to avoid the presumption of section 21350, we disagree that our narrow construction of section 21351 leads to absurd or ridiculous consequences.

Sections 21350 and 21351 require a delicate balancing of interests. On one hand, there is the desire to protect elderly or dependent adults from unscrupulous care custodians. On the other, there is the need to honor the testamentary wishes of elders and dependent adults who may wish to reward those who provided them care. In support of her policy arguments, Elizabeth quotes from a staff memorandum of the California Law Revision Commission which examined four factors that impact the potential that a care custodian may take advantage of an elder or dependent adult. What Elizabeth cites in her brief was a preliminary staff memorandum prepared for the California Law Revision Commission, which preceded the issuance of its recommendation in October 2008. (Mem. 2008-13 (Mar. 10, 2008) study L-622.)

The restrictions on donative transfers in sections 21350 and 21351 were referred by the Legislature to the California Law Revision Commission in 2006 for study. (Stats. 2006, ch. 215.) The recommendations of the Law Revision Commission are currently before the Legislature in Senate Bill No. 105 (2009–2010 Reg. Sess.). (Recommendation on Donative Transfer Restrictions (Oct. 2008) 38 Cal. Law Revision Com. Rep. (2008) p. 107 (Law Revision Recommendation).) An analysis of that legislation for the Senate Judiciary Committee sets out the circumstances under which the Law Revision Commission was asked to study this topic. It notes that the Chief Justice, in a concurring opinion in *Bernard*, invited the Legislature "to consider modifying or augmenting the relevant provisions in order to more fully protect the interests of dependent adults and society as a whole, by according separate treatment to longer term care custodians who undertake that role as a consequence of a personal relationship rather than as an

occupational assignment." (*Bernard, supra,* 39 Cal.4th at p. 816 (conc. opn. of George, C. J.); see Sen. Com. on Judiciary, Analysis of Sen. Bill No. 105 (2009–2010 Reg. Sess.).)

The Senate Judiciary Committee analysis states that a cleanup bill introduced in 2007 (Assem. Bill No. 1727 (2007–2008 Reg. Sess.)) was originally intended to respond to the Chief Justice's invitation in *Bernard, supra,* 39 Cal.4th at pages 820–821. But the donative transfer provisions were deleted from the bill and referred to the Law Revision Commission because it was already studying the subject. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 105 (2009–2010 Reg. Sess.).) The proposed legislation, Senate Bill No. 105, would reenact the exception to the presumption of invalidity provided to care custodians who are married to the dependent or elder adult without providing an exception where the marriage is the result of undue influence or fraud. (Sen. Bill No. 105 (2009–2010 Reg. Sess.) § 13.) The Law Revision Commission recognized the risk that family members might perpetrate financial abuse of the elderly, citing a study finding that over 85 percent of confirmed cases were committed by relatives. (Law Revision Recommendation, p. 125.) But it observed: "Despite the prevalence of abuse by relatives, family members are exempt from the statutory presumption of undue influence. The reason for that apparent incongruity seems clear. Family members are also the most likely intended beneficiaries of an at-death transfer. The 'naturalness' of a gift to a family member weighs heavily against the presumption that such a gift was the product of undue influence. Nor is there anything inherently suspicious about a family member providing care services to a dependent relative. Such assistance is expected and beneficial." (*Ibid.*) The Commission recommended that the existing categorical exceptions to the restriction on donative transfers be continued with minor revisions which are not relevant here. (*Id.* at p. 131.)

The Law Revision Commission also noted that the restrictions on donative transfers currently codified in sections 21350 and 21351 supplement the common law on menace, duress, fraud and undue influence. "A gift that does not fall within the scope of the statutory presumption can still be challenged under the common law." (Law Revision Recommendation, p. 113.)

■ In sum, we find no support in the language of section 21351, subdivision (a), or in the legislative history, which would make the spousal exception to the presumption of invalidity unavailable to a spouse who allegedly persuaded the transferor to marry through undue influence or fraud. The risks that a family member may exercise undue influence on an elder or dependent adult are well known. The Legislature has addressed the policy alternatives by choosing not to create an exception for the circumstances presented here. It is not our province to do so.

## DISPOSITION

The judgment is affirmed. Respondent is to have her costs on appeal.

Manella, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 2009, S177760.